Argued October 12, reversed November 15, 1978

# ZIEMANN, *Appellant,*
### *v.*
# SHINE, *Respondent.*
## (TC 48562, SC 25563)

586 P2d 348

William B. Murray, Portland, argued the cause and filed briefs for appellant.

Willard Bodtker, Albany, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and Tongue, Bryson, and Linde, Justices.

LINDE, J.

**LINDE, J.**

In a contract executed in 1971, plaintiff agreed to buy and defendant to sell the "mineral rights and mining claims together with all equipment and machinery now located upon the said mines or appurtenant thereto" at six named locations in Idaho for $25,000, with a downpayment of $5,000 and annual instalments ending in 1979. The agreement contained the following provisions:

> It is expressly agreed and understood that second party, purchaser, is entering into this agreement based upon his own knowledge, understanding and previous personal view of said mining claims and property and is in no way relying upon any representations whatever made by the seller save and except that the said seller does warrant title to said mineral rights, mining claims, equipment and machinery.

> Second party shall assume responsibility of continuing improvements and proving the claims and doing the annual assessment work and shall committ [sic] no waste.

The disagreement between the parties concerns what the seller warranted in this provision.

Plaintiff did not make payments due after 1975. In February, 1976, he brought the present action for damages for an asserted breach of defendant's warranty of title. Defendant admitted making the agreement and otherwise denied the complaint. He also "cross-complained" for foreclosure of plaintiff's interests under the contract. The case was tried to the court without a jury. The court decided against plaintiff's complaint, adopting "findings of fact" submitted by defendant, and entered a decree which apparently meant to foreclose plaintiff's interests unless he paid the delinquent instalments by December 1, 1977.[1] Plaintiff appeals.

---

[1] The decree literally provides:

That plaintiff may have and take onto [sic] and including December 1, 1977 in which to pay all of the delinquent installments,

Most of plaintiff's assignments of error technically concern the court's rulings on a series of objections to plaintiff's questions. By these questions, plaintiff sought to elicit testimony bearing on whether there had been any mineral discovery at the claimed locations sufficient to qualify them as valid mining claims, but the court sustained defendant's objections to this line of inquiry. The underlying issue is whether the presence or absence of economically useful mineral deposits was relevant to defendant's warranty of "title to said mineral rights [and] mining claims" in the agreement quoted above. If the existence of such a mineral discovery was immaterial to the warranty, the evidence was properly excluded; if not, the judgment must be reversed to allow a new trial.

This underlying issue, however, depends on the meaning of the warranty in the agreement. The positions of the parties are less than clear. Plaintiff's complaint alleges that defendant breached the warranty in that defendant had "no title whatsoever," that "[t]he land was owned by others," that title was still in the United States, that "[t]he claims had never been patented . . .," or "clear listed for patent" and that they "were not eligible for patent for want of discovery of a valuable mineral deposit."[2] The complaint could be read to imply that plaintiff reads the warranty clause to warrant title by virtue of a patent, that is to

namely the sum of $5,500.00 and thereby reinstating the agreement between plaintiff and defendant. If plaintiff shall surely make the payments before said, the contract between plaintiff and defendant shall be foreclosed and the escrow agents, namely MORLEY, THOMAS, ORONA and KINGSLEY, shall be authorized and directed to deliver to defendant the release of interest in the mining claims executed by plaintiff and held by them thereby terminating all plaintiff's interest in and to the mining claims, the subject matter of this suit.

[2]Plaintiff also alleged that

Defendant warranted that said claims were mines, not mineral prospects. But there was no discovery of minerals on said claims in quantity and quality sufficient to justify any mining operation.

say, in fee.[3] However, in his brief and on oral argument plaintiff recedes to the contention that, even if defendant did not warrant his mining claims to be patented or immediately patentable, he at least warranted that their location had been perfected under the mining laws, which requires not mere posting and recording of the location but discovery of a valuable mineral deposit, and that the requisite deposit had not subsequently been lost by mining it out or other circumstances. 30 USC §§ 23, 26; *see* 1 American Law of Mining, § 4.15 (1960). Defendant's position in general terms is that all he purported to convey is "mining claims," and that plaintiff did not show that these "claims" were owned by any other person or that defendant lacked a "possessory right" or the "right to convey" the claims.

The question is not, at least initially, what degree of "title" a locator has under the mining laws but what kind of "title" defendant warranted. Warranties of title in unpatented mining claims are said to be uncommon, and their ambiguities are well recognized. 3 American Law of Mining, §§ 15.21-15.22 (1960). Given this ambiguity and the complexity of the mining laws, such a warranty cannot be assigned a precise meaning as a matter of law. Therefore, in the absence of a determination of the intended meaning of the warranty clause at the time of the transaction, it is equally impossible to decide whether the court erred in excluding evidence bearing on the extent of mineral discoveries. The trial court stated in a letter opinion following the trial, though not in the formal findings, that "[t]he court is of the opinion the meaning ascribed by the parties to defendant['s] 'warranty of title', was

---

[3] Plaintiff's allegation of damages measured by the value of "said claims and the timber thereon" seems to lend support to such a reading of plaintiff's theory, since under 30 USC sections 601-615 the seller could warrant title to the timber only in transferring a patent. *See also* 1 American Law of Mining § 1.23 (1960). Under 30 USC § 612, unpatented claims carry the right to use such timber as necessary for prospecting, mining, and processing, and for construction of buildings in connection with mining operations.

that the claims had been staked out, the boundaries had been marked, that notices had been posted and filed, that the annual assessment work had always been done, and that defendant was the purchaser and successor in interest of the original claimants." His rulings on defendant's objections to plaintiff's questions as the trial proceeded were evidently based on this premise.

However, a careful examination of the record shows no evidence on which this opinion might be founded. Lacking a basis for assuming that the parties did not intend the warranty of "title" to mean as much as plaintiff contended, or that this might not be shown in the course of trial, the court erred in preventing plaintiff from pursuing the question of mineral discoveries. Accordingly, the judgment must be reversed. If there is a new trial, the relevance of the degree to which defendant had perfected his mining locations will depend on the evidence of what the parties meant by the warranty clause of the agreement.

The parties are also in disagreement whether the court had jurisdiction upon defendant's "cross-complaint" to foreclose plaintiff's interest in mining claims situated in Idaho. See ORS 14.030. The point was neither adequately briefed nor argued on appeal, and in view of our reversal of the decree on other grounds we do not pursue it at this point.

Reversed.